# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**UNITED STATES OF AMERICA**                    **CASE NO.: 5:20-CR-40-JA-PRL**

**v.**

**JOSEPH CATALANO,**

_____/

## SENTENCING MITIGATION MEMORANDUM AND MOTION FOR DEPARTURE AND/OR VARIANCE

**COMES NOW,** the undersigned counsel on behalf of, JOSEPH CATALANO,  and respectfully submits the following Sentencing Mitigation Memorandum and Motion pursuant to Rule 32 of the Federal Rules of Criminal Procedure, the Federal Sentencing Guidelines, 18 U.S.C. § 3661 and 18 U. S. C. § 3553.

Rule 32(c ) sets forth the requirements of the presentence investigation and the resolution of any disputes by findings of fact and conclusions of law. Title 18 U.S.C. §3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence". Title 18 U.S.C. 3553 sets forth the appropriate sentencing factors the court should consider both in relationship to the personal characteristics of the Defendant and the offense as well as the Federal Sentencing Guidelines. The general text for the Federal Sentencing Guidelines should be considered, but is advisory.

On June 17, 2020, a federal grand jury in Ocala, Florida, returned a two count Indictment in the above referenced case. This Indictment charged Mr. Catalano with one count of making a false statement to an agent of the department of Homeland Security, in violation of Title 18, United States Code Section 1001 (a)(2).

On November 30, 2020, Mr. Catalano entered a plea of guilty to count two of indictment. The sentencing hearing is presently scheduled for February 19, 2021.

## SUMMARY STATEMENT OF THE FACTS

On September 15, 2017, Christina Lynn Catalano submitted an application for disaster assistance benefits to FEMA. She claimed her primary resident was 2250 Mars Street, Inverness, Florida, and that she rented the residence with her husband, Joseph Samuel Catalano. On September 27, 2017, a FEMA inspector visited the residence and determined that it was a two-bedroom mobile home that was not damaged from the storm. While the inspector was at their residence, Mrs. Catalano indicated she was withdrawing her application for disaster assistance. On November 20, 2017, FEMA received a letter from Christina appealing the decision to deny her claim. In her appeal, Christina falsely claimed she was living in a separate travel tailer from her husband. She indicated that the travel trailer was located on the same property at 2250 East Mars Street, Inverness, Florida. Christina claimed that she had lived in this travel trailer since August 2016 and that it was her primary residence when Hurricane Irma occurred. Due to Hurricane Irma, Christina claimed the travel trailer was destroyed and she was displaced from her primary resident and forced to live in a shed with no utilities. Follow up investigation revealed that there was no travel trailer on the Inverness property and that Christina fabricated the existence of one to defraud FEMA and collect monetary assistance. Specifically, DHS-OIG determined that the photo of the damaged travel trailer claimed by Christina was from an online news story of a travel trailer damaged in

Texas during Hurricane Harvey in 2017. Christina provided document in appeal that indicated the travel trailer was found to be unsalvageable and later destroyed for scrap metal. The investigation revealed that these documents were all fraudulent. On January 31, 2020, agents interviewed Christina and Joseph at their residence. Christina admitted she was the person who submitted the application for disaster assistance. She also admitted that she was the person who submitted the supporting documents and photo for the application. After being confronted with evidence showing that her statements were false, Christina continued to falsely claim that the documents were authentic and that the fraudulent travel trailer was destroyed by the storm. During Joseph's interview, he indicated that his wife, Christina, lived in a travel trailer on their property that was destroyed by Hurricane Irma. At the time of his statement, Joseph knew that no such travel trailer existed, that Christina did not live in a travel trailer at the time she submitted her disaster assistance application, and that the alleged travel trailer was not destroyed by Hurricane Irma. Christina's claim regarding the travel trailer was fabricated in order to defraud the United States of emergency funding through FEMA.

## **DEFENDANT'S BACKGROUND**

Mr. Catalano is a 55 year old married man of five children, his children are all grown adults. Mr. Catalano was born in Chicago where he was primarily raised. Mr. Catalano had a rough childhood growing up. He was raised by his parents in Chicago until 1970 when his father left. Mr. Catalano stated his father was a Chicago Police Officer and one day came home and told the Defendant's mother to pack the house up. He then moved them into an apartment and left. Catalano stated that his father did not financially provide for them and they were eventually forced to move in

with their maternal grandparents in a rough part of Chicago. The neighborhood they lived in was known for prostitution, gangs, and drug addicts. They were poor and went without food on numerous occasions. After his father left, his mother struggled financially and personally for over seven years. Additionally, the Defendant's mother was physically abusive to Mr. Catalano. Mr. Catalano reported that in 1975 there was an accident where his little brother got hurt. The Defendants mother beat him and he was blamed for his brother's injury. The Defendant later had a relationship with Patricia Puccy who was a drug addict. It was during that time that the Defendant was introduced to using drugs. The Defendant was married for 26 years to Michelle Catalano. The Defendant and Michelle divorced and are friends currently. The Defendant has a daughter, Heather Catalano, age 26, that is deaf and has mental health issues. In 2016, Heather violently attacked Christine Catalano and Mr. Catalano with a knife and stabbed them both repeatedly. The Defendant almost died as a result her the knife attack. His daughter is currently in jail for the stabbing and subsequently violates her supervision. Despite the vicious attack, Mr. Catalano supports his daughter and stands by her to this day. The Defendant suffers from Post Traumatic Stress Disorder as a result of the stabbing and almost passing away from the attack.

## GUIDELINE CALCULATIONS

According to the probation Department the United States Sentencing Guidelines calculation results in Mr. Catalano being scored at criminal history category I, and a total offense level 10. The offense level rose as a result of the calculated loss of $18,985.80 which the defense argues should not apply to Mr. Catalano. The guideline imprisonment range according to the probation department is therefore 6 to 12 months. The guidelines are advisory and only one factor that the Court should consider in fashioning a fair and reasonable sentence that accomplishes the goals of Title 18, USC, Section 3553.

## GUIDELINE ANALYSIS, DEPARTURES AND VARIANCES

**A.     Deferral to the guidelines alone is unreasonable**

In Mr. Catalano's case, simply deferring to the guidelines results in an unfair and harsh sentence. Mr. Catalano's background, including his professional background and father of five adult children calls for a lesser sentence. Mr. Catalano is asking this Court to look at all of the §3553 factors before determining his appropriate sentence.

**B.     Post offense.**

Mr. Catalano entered a plea of guilty and accepts responsibility for his actions that created this criminal case. The Defendant is remorseful and feels bad for lying to the federal agents. The Defendants overall role in this case was minimal and it was the Co-Defendant that was the driving force behind the fraud. The Defendant is embarrassed by the case and was a longtime employee of Major League Baseball. This case and his conviction will basically destroy his future employment in major league baseball and is a very heavy price to pay.

**C**.     **Employment record**.

Mr. Catalano has been employed since he was roughly 10 years old. After his father left the family he began to work. He continued to work jobs for the rest of his youth and as an adult. He is an extremely hard worker and helped support his mother and siblings growing up. Despite his rough and difficult childhood, he always worked hard and tried to better himself. Mr. Catalano managed to overcome his life obstacles and is productive member of society.

D.     **Physical and medical**.

Mr. Catalano has multiple medical and physical disabilities. The Defendant has ongoing cardiac issues and his heart is not healthy. He has had multiple surgeries and has hypertension and had diverticulitis. Mr. Catalano had a cardiac catheterization in 2020 and is on multiple prescription medications. He takes Lisinopril. Hydrochlorothiazide, Famotidine, Ropinirole and Trazadone. Mr. Catalano's medical issues have gotten worse since he was incarcerated and he is in need of getting appointments with his current doctors outside of prison. As indicated earlier he also suffers from the long term effects of the multiple stab wounds that were inflicted on him by his daughter.

E.     **Other Title 18, Section, §3553 factors to consider**.

It is respectfully requested that this Honorable Court also consider the following in mitigation of the sentence pursuant to Title 18, USC § 3553(a).

1.     **The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law and to provide just punishment**.

Mr. Catalano understands and has accepted responsibility for the fact that he was convicted and committed a serious criminal offense. Mr. Catalano is a criminal history category one and the time he has spent in custody has been a real shock to his system. The Defendant has learned his lesson and does not need to spend any more time in prison to have him understand the seriousness of his offense. As a result of his plea and sentencing Mr. Catalano will be a convicted felon, which will follow him for the rest of his life and limit his ability to find suitable work and support his family and can negatively affect his housing options..

2.     **To afford adequate deterrence**.

Society is aware of the significant penalties for making false statements crimes like his. Even the brief incarceration he has served will  adequately deter any citizen, particularly a successful man like Mr. Catalano, from committing any criminal acts. Further time in prison is simply not needed to accomplish this sentencing goal.

3.     **To protect the public from further crimes of the Defendant**.

Mr. Catalano presents a very low risk of future harm to society. He is in his late 50's and the recidivism rate for people his age is very low.

4.     **Family support**.

Mr. Catalano has the support of his wife Christina, and his ex-wife, the Defendant also has adult children that he loves.

5.     **Defendants substance addiction.**

 Mr. Catalano began consuming alcohol at the age of 29, with his last use occurring approximately ten years ago. He began abusing cocaine at age 18 and continued using heavily until 2008. Mr. Catalano overdosed on crack cocaine when he was 29 years old and he had a $400 a day habit. The Defendant began using heroin in 2008 and continued his use for approximately one year. He began abusing methamphetamine in 2010, smoking approximately one half of a gram daily. The Defendant tested positive for methamphetamine on December 10, 2020, December 17, 2020; and December 31, 2020, resulting in the Defendant's pretrial release being revoked. On September 10, 2020, the Defendant was referred to substance abuse treatment at Sober Solutions Counseling

located in New Port Richey, Florida. On December 8, 2020, the Defendant began attending individual weekly sessions. These sessions were discontinued upon the Defendant being incarcerated on January 7, 2021. The addiction had a very strong grip on him and even facing the possibility of going to jail he still used the drug. Mr. Catalano was sincere and made many attempts to stop using and was doing well in counseling. He participated fully and was an asset to the group counseling. Since his incarceration he has not used drugs. The detox of being locked up was a blessing in disguise and he is now ready to live his life clean and sober. Mr. Catalano has expressed on multiple occasions his desire to live a drug free rest of his life. The Defendant will continue with counseling and treatment upon his release from custody.

6.    **Additional Relief**

Mr. Catalano respectfully requests the Court permit him to be released from custody on the date of his sentence. The time that he has served while waiting for sentencing has been very difficult on him. He has multiple medical issues and the thought of getting Covid 19 virus while in custody is very stressful for him.

## **CONCLUSION**

The Defendant is requesting his release from jail and his opportunity to do well on supervision. The incarceration he has already served, followed by supervised release, is adequate to meet the goals of justice in this case, is not more than necessary and is reasonable to meet the requirements of the sentencing guidelines and statutory provision so of Title 18, USC § 3553.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 13, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Office of the United States Attorney, further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following: none.

/s/ Michael W. Nielsen, Esquire
_____
MICHAEL W. NIELSEN, ESQUIRE
NIELSEN LAW FIRM.
720 West State Road 434
Winter Springs, Florida 32708
(407)327-5865 [FAX(407)327-0384]
Attorney for Defendant
Florida Bar No.: 0794392
nielsenlaw@cfr.rr.com