IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,              Ocala, Florida

          Plaintiff,               Case No. 5:20-cr-40-Oc-28PRL

vs.                                    October 8, 2020

CHRISTINA LYNN CATALANO,               2:28 p.m.
JOSEPH SAMUEL CATALANO,
                                       Courtroom No. 1A
          Defendants.
_____

DIGITALLY RECORDED SHOW CAUSE HEARING
BEFORE THE HONORABLE PHILIP R. LAMMENS
UNITED STATES MAGISTRATE JUDGE

GOVERNMENT COUNSEL:

    **WILLIAM S. HAMILTON, ESQ.**
    US Attorney's Office - FLM
    35 SE 1st Avenue, Suite 300
    Ocala, FL  34471

DEFENSE COUNSEL:

    **CHRISTINE NAN BIRD, ESQ.**
    Federal Public Defender's Office
    201 SW 2nd Street, Suite 102
    Ocala, FL  34471

COURT REPORTER:

    Shannon M. Bishop, RDR, CRR, CRC
    221 North Hogan Street, #150
    Jacksonville, FL  32202
    Telephone:  (904)549-1307
    dsmabishop@yahoo.com

(Proceedings recorded by mechanical stenography; transcript produced by computer.)

P R O C E E D I N G S

October 8, 2020                                                        2:28 p.m.

- - -

COURT SECURITY OFFICER: Judge Philip R. Lammens presiding.

THE COURT: Please be seated.

This is Case No. 5:20-cr-40, *United States verse Christina Catalano*.

Mr. Hamilton is here for the government.

MR. HAMILTON: Good afternoon, Your Honor.

THE COURT: And Ms. Bird is here with the defendant.

Ms. Bird, were you appointed to represent Ms. Catalano?

MS. BIRD: Your Honor, my office was appointed. And this case was assigned to Mark Rosenblum. He's not available today, so I'm here.

THE COURT: Okay. So you -- you guys were appointed?

MS. BIRD: Yeah. He is a federal PD, too. So our office was appointed. So our -- yes.

THE COURT: Okay. Ms. Catalano, you are here because pretrial services requested a warrant for your arrest in a petition for action on a condition of your release.

Specifically, they allege that on September 17th, 2020, you submitted a urine sample that tested positive for methamphetamine, and on October 6th that test result was

```
 1  confirmed.
 2          The Court is also aware of a prior positive
 3  urinalysis from Oct- -- I'm sorry, from September 9th, 2020,
 4  for which pretrial advised the Court that there was a positive
 5  urinalysis, but at that time requested that no action be taken
 6  on it.  And then I'm also aware of a positive urinalysis from
 7  today.
 8          Did you receive a copy of the petition?  That is the
 9  document that sets forth the September 17th urinalysis
10  allegation.
11     (Counsel confers with defendant.)
12          MS. BIRD:  She just got it, Your Honor.
13          THE DEFENDANT:  I just received it.
14          THE COURT:  You have it?
15          THE DEFENDANT:  Yes, in my hand.  I received this
16  now.  She gave it to me.
17          THE COURT:  Okay.  Ms. Bird, will you slide that mic
18  closer to Ms. Catalano.
19          THE DEFENDANT:  I'm sorry.  Yes, sir.  She just
20  handed it to me, sir, just now.
21          THE COURT:  Okay.  We'll talk about the violation in
22  this hearing and how to proceed.
23          If the government seeks the revocation of your bond
24  and an order of your detention, you would need to establish by
25  clear and convincing evidence that you violated the bond
```

```
 1  conditions and that no condition could assure that you would
 2  flee or pose a danger to yourself or to the community, or it
 3  could also show that you're unwilling to abide by the
 4  conditions of your release.
 5          The disconcerting part -- this is a relatively new
 6  case.  The bond issued on September 9th, so less than a month
 7  ago, or about a month ago.
 8          As part of the conditions of your release, you would
 9  have been required not to use controlled substances.  You're
10  required to participate in drug testing.  And that is why we
11  are here.
12          Mr. Hamilton, what's the government's position on all
13  of this?
14          MR. HAMILTON:  Your Honor, we are going to request
15  that she be detained and her pretrial release conditions be
16  revoked.
17          THE COURT:  Ms. Bird, is it contested that she
18  violated the conditions of her bond?
19          MS. BIRD:  No, Your Honor.  She admits that she
20  violates conditions of the bond.  But our argument would be
21  that the Court could impose additional conditions that would
22  assure that she would not flee the jurisdiction or be a danger
23  to herself or others, and that it's not so unlikely that she
24  will fail to abide by the conditions of release that the Court
25  needs to revoke her bond at this time.
```

1      THE COURT: Mr. Hamilton, you can make your argument.
2  If you would slide the mic a little closer.
3      MR. HAMILTON: Yes, Your Honor, I will. To begin
4  with, as the Court already noted, Ms. Catalano has been on
5  pretrial release for just a little under a month.
6      She's accumulated three positive screens for
7  methamphetamine already; once at her initial appearance, once
8  in a periodic drug screen, which she refused to admit, and then
9  for a third time when she was -- when she entered the
10 courthouse today.
11     She did enter an admission stating that she last used
12 on the 4th of this month, which would mean, going solely on her
13 own account, that despite having two prior positive screens for
14 methamphetamine and being repeatedly instructed that that was
15 not permissible under the terms of her supervised release, she
16 went ahead and used anyway.
17     I -- I'll admit I'm also covering this case for AUSA
18 Felicetta. So I went through her criminal history. And,
19 frankly, it is maybe one of the densest criminal histories I've
20 seen in a long time.
21     Over a period of what appears to be approximately
22 seven years, it seems to me she's accumulated a total of 29
23 convictions in separate criminal cases. A number of these are
24 for misdemeanors, most of which are domestic violence or fraud
25 based.

1  But it appears to me in substantially more than half
2 of these she either was issued a domestic violence injunction
3 by the state authorities, and was arrested for failing to
4 comply with that order, was placed on probation and then
5 violated that probation, or in a number of cases failed to
6 appear; for instance, for her Pasco County fraud conviction in
7 2008CF3339, and others.
8  So it appears that she has a long history of not
9 following the instructions of court -- of courts, and -- or
10 obeying the dictates of judicial orders restricting her
11 behavior that appears to span nearly a decade in almost 30
12 separate criminal convictions.
13  On top of that, her mental health history, while
14 unfortunate and certainly not her fault, is (a) exacerbated by
15 her drug use, and (b) pose a risk of harm.
16  Because based on my review of these records, she made
17 at least one suicide attempt while in a mental health crisis
18 situation.  I think common sense would tell us that
19 methamphetamine -- repeated methamphetamine abuse is only going
20 to exacerbate any mental health issues.
21  And, frankly, I have serious concerns about her own
22 safety and the safety of others around her if she has a similar
23 mental-crisis episode before, during, or after a time that she
24 abuses these illegal narcotics.
25  I think all of this taken together, particularly her

1   lengthy history of an unwillingness or an inability to follow
2   court orders restricting her behavior, restricting her from
3   taking narcotics, restricting her from contacting victims in
4   domestic violence cases, showing up to court at a particular
5   point in time, plus her repeated violations of her pretrial
6   release conditions, just in the first month of supervision, I
7   think unfortunately paints a very clear picture of what's to
8   come, which is -- I don't think she's willing or possibly able
9   to follow the entirely reasonable conditions that the Court has
10  set for her.
11          And I think if she's released on conditions -- even
12  more restrictive conditions like an ankle monitor, which I
13  don't see how that would necessarily prevent her from obtaining
14  and using more methamphetamine, I think there would be a real
15  risk of her harming herself or others or not showing up to her
16  next court appearance, or, frankly, both.  And on that basis,
17  Judge, I would ask that her release be revoked.
18          Sorry I neglected to mention this.  She actually
19  faces significant penalties in this case.  I've conferred with
20  AUSA Felicetta.  Her guidelines range -- even if she pleads
21  guilty in a timely manner and receives the expected guidelines
22  points for acceptance, it would be 30 to 37 months in federal
23  prison, which that range is advisory, but I think it suggests
24  that a significant term of incarceration is likely if she's
25  convicted.

1       And I think that provides further incentive for her
2  to flee, especially since, based on my review of her criminal
3  history, I don't think she has done a period of incarceration
4  longer than approximately nine months in the past.  And I think
5  that -- I think that would further incentivize and make it
6  difficult for her to comply with her conditions.
7       THE COURT:  What's your recommendation, Ms. Bird?
8       MS. BIRD:  Your Honor, I would point out to the
9  Court -- and not to minimize the violation at all -- that other
10 than the positive drug screen, she's been complying with her
11 conditions of pretrial release, and specifically complying with
12 the requirement that she attend mental health counseling.
13      She has been doing that regularly.  It is clear that
14 she does have a mental health history involving anxiety and
15 post traumatic stress disorder, for which she is treating.
16      With regard to the positive drug screen, I know that
17 pretrial services always attempts to work with people who have
18 addictions.  And in this case they have set her up for drug
19 counseling.
20      But because of an illness and a pending COVID-19 test
21 that my client had, her treatment was delayed.  I would -- I
22 think that if the Court was going to -- the Court could
23 continue her on pretrial release with the condition that she
24 comply with that treatment.
25      And I also do think that the Court could impose

1  location monitoring or GPS monitoring that -- you know, of
2  course, it can't prevent somebody from doing something they're
3  not completely set out to do, but it could certainly provide
4  the Court with information about the -- my client's
5  whereabouts, and it would put my client on notice that she
6  would not be able to leave the home.
7              I wanted to point out also, just in terms of her
8  criminal history, she was released -- her last period of time
9  in incarcerative -- incarceration ended in 2015.  So up until
10 now it looks like she doesn't have a criminal history, at least
11 that -- not that I have seen.
12             She does have those violations of court orders, which
13 I know the Court would take into consideration from 2007 and
14 2008.  And just to give that context, that was during a
15 dissolution of marriage with a spouse.
16             It doesn't minimize it.  But it is remote and it is
17 related to a specific type of context of issues.  So just with
18 respect to those domestics issues.
19             Although she is facing a period of Bureau of Prisons
20 potentially if she's incarcerated, the guideline range is 30 to
21 37 months.  And that's approximately two-and-a-half to three
22 years.
23             That is not so significant that it would cause her
24 necessarily to flee the jurisdiction.  And, you know, she knew
25 today when she came all the way to Ocala that she was facing

1  potential incarceration if she did show up for court.
2         She is working -- starting her certification to
3  become a roadside assistant for a company -- and correct me if
4  I'm wrong.  It's called --
5         THE DEFENDANT:  Agero.
6         MS. BIRD:  -- Agero.  And that would assist her,
7  especially as this case goes on, in potentially making some
8  restitution, because this is a case that involves restitution.
9         She admitted her activity today and received a
10 positive screen.  And I would just ask the Court to give her
11 another chance to start her treatment and to hopefully get some
12 assistance with this methamphetamine addiction.  It's a
13 terrible addiction.
14        And hopefully, if she starts her treatment, she'd be
15 less likely to violate that term of condition again.  And,
16 also, the Court could put her on -- the Court could require --
17 I know the Court's requiring weekly substance abuse screens.
18 But if the Court could have her on maybe a closer type of
19 supervision, if there is one available.  And I'm not sure about
20 that.
21        And so I would ask the Court to consider leaving her
22 out, giving her this one last chance, with the knowledge that
23 if she were violating it again that she would definitely be
24 detained.
25        THE COURT:  What -- what does the job entail?  Does

1  she have it?  Does she have that job, or...
2           MS. BIRD:  She's starting certification.  And that's
3  really all that I can -- I know.  But my client could talk --
4  could maybe --
5           THE COURT:  Well, maybe you could just ask her and
6  you can tell me, so she doesn't have to.
7      (Counsel confers with defendant.)
8           MS. BIRD:  So it's a -- the job she's attempting to
9  get certified for is a roadside assistance job.  So I guess if
10 you have a vehicle that has roadside assistance in it and --
11 you know, whatever company that car manufacturer contracts
12 with, they employ people.
13          So the certification begins in 11 days, the process
14 of getting certified.  And she would be starting work on
15 November 29th.  It would be remote from her home.  And I'm
16 assuming what she would be doing is answering calls and
17 dispatching tow trucks and so forth.
18          THE COURT:  Now, Mr. Hamilton -- and if you need
19 Officer Coomer to help you with the time line.
20          So the three tests -- the first positive was tied to
21 the initial appearance, and then there was a subsequent
22 positive, which was determined to be independent of the initial
23 positive, and then a third positive today; is that right?
24          MR. HAMILTON:  That's my understanding.  And I -- I
25 didn't --

1  THE COURT: So really two since put on bond?
2  MR. HAMILTON: Well, since put on bond, yes. Her
3  initial, that would have been the day of her arrest. She had
4  been using at that time.
5  THE COURT: All right. And I suppose pretrial is
6  working -- or would work to get her drug counseling, or...
7  PRETRIAL SERVICES OFFICER: Yes, sir. It's my
8  understanding that she has an appointment (inaudible).
9  THE COURT: So if that goes forward, then presumably
10 she would start getting some counseling?
11 PRETRIAL SERVICES OFFICER: Yes, sir.
12 THE COURT: Well, I think -- I think -- I mean, the
13 one -- the next thing that I can do, short of revoking the
14 bond, is to just limit her mobility substantially by putting
15 her on a GPS device and having her subject to home detention,
16 which would keep her in her residence at all times, except if
17 she needed to leave for employment, education, religion,
18 medical, or substance or mental health treatment, attorney
19 visits, court visits, or other movement as approved
20 specifically by the pretrial services officer.
21 But, I mean, basically that means -- like she can't
22 go grocery shopping, she can't run an errand. If she has kids,
23 she can't take the kids somewhere, unless she was specifically
24 approved to do so. So it's pretty restrictive. But it's not
25 in custody.

1         MS. BIRD:  Yes, sir.
2         THE COURT:  I think anything short of that would
3  be -- I don't know what it would add -- you know, I don't know
4  what it would add, but, I mean, it would be nice if she had an
5  opportunity to benefit from some treatment.  And maybe she
6  hasn't been out long enough to get that opportunity.
7         I think part of the problem, too, generally, might be
8  awareness to acknowledge that you have a problem and to accept
9  treatment.  It makes it tricky if you're trying to avoid a
10 violation.
11        But I'll leave that to you, Ms. Bird.
12        MS. BIRD:  Yes, sir.
13        Your Honor, I discussed that with my client.  I also
14 discussed the implications of a violation of -- of pretrial
15 release and what that could mean for her in the future, in
16 terms of her case and in terms of the signature bond that was
17 executed in the case.  And she's been made fully aware.  And I
18 hope that she can be successful if the Court gives her another
19 shot.
20        THE COURT:  That's true, if you -- a violation of
21 your bond could result in forfeiture of the signature bonds.  I
22 don't think it will be easy for you, Ms. Catalano, but we'll
23 try one more time with the restrictions I said, a GPS monitor,
24 which itself will require your attention to keep it charged and
25 not tamper with it and to comply with conditions upon

```
 1   detention.
 2             If you are unable to do so, including because you
 3   test positive again or fail to otherwise comply with the
 4   conditions, you should expect an order of detention.
 5             Do you understand that?
 6             THE DEFENDANT:  Yes, sir.
 7             THE COURT:  Ms. Bird, is there anything else to take
 8   up for your client?
 9             MS. BIRD:  No, Your Honor.
10             THE COURT:  Mr. Hamilton?
11             MR. HAMILTON:  No, Your Honor.  Nothing further.
12             THE COURT:  All right.  We'll be in recess.
13             COURT SECURITY OFFICER:  All rise.
14        (The proceedings concluded at 2:51 p.m.)
15                             - - -
```

## CERTIFICATE

UNITED STATES DISTRICT COURT    )
                                )
MIDDLE DISTRICT OF FLORIDA      )

      I hereby certify that the foregoing transcript is a true and correct computer-aided transcription from the official electronic sound recording of the proceedings in the above-entitled matter.

      DATED this 7th day of April, 2021.


      s/Shannon M. Bishop

      Shannon M. Bishop, RDR, CRR, CRC