1                    **UNITED STATES DISTRICT COURT**
                      **MIDDLE DISTRICT OF FLORIDA**
2                           **OCALA DIVISION**

3                  **Case No.:  5:20-CR-40-JA-PRL**

4


5     **UNITED STATES OF AMERICA,**

6
                  Plaintiff,              Ocala, Florida
7                                         February 19, 2021
                      v.                  11:21 a.m. - 12:03 p.m.
8
      **CHRISTINA LYNN CATALANO,**
9
                  Defendant.
10    _____/

11


12                     **TRANSCRIPT OF SENTENCING**
              **BEFORE THE HONORABLE JOHN ANTOON II**
13                 **UNITED STATES DISTRICT JUDGE**

14


15    **APPEARANCES:**

16

      **Counsel for the Government:**
17
                  Michael Felicetta
18                United States Attorney's Office
                  35 SE 1st Avenue
19                Suite 300
                  Ocala, Florida  34471
20


21    **Counsel for Defendant:**

22                Mark Rosenblum
                  Federal Public Defender's Office
23                200 West Forsyth Street
                  Suite 1240
24                Jacksonville, Florida  32202

25

2

1    **APPEARANCES: (continuing)**

2    Court Reporter:        Nikki L. Peters, RPR, CRR, CRC
                            Federal Official Court Reporter
3                           401 West Central Boulevard, Suite 4600
                            Orlando, Florida  32801
4                           courttranscripts@outlook.com

5

     Proceedings recorded by mechanical stenography.
6    Transcript produced by Computer-Aided Transcription.

7                    **INDEX OF PROCEEDINGS**

8                                                     **PAGE**

9    Objection by the Defendant                          6

10   Mitigation Argument by Mr. Rosenblum                8

11   Allocution by the Defendant                         12

12   Argument by Mr. Felicetta                           12
     Imposition of Sentence                              21
13
     Certificate of Reporter                             27
14

15

16

17

18

19

20

21

22

23

24

25

3

1              **P R O C E E D I N G S**

2              **THE COURTROOM DEPUTY:**  The next case is the United

3      States of America v. Christina Lynn Catalano,

4      Case No. 5:20-cr-40-JA-PRL.

5              Will Counsel please state your name for the record.

6              **MR. FELICETTA:**  Good morning, Your Honor.

7      Michael Felicetta for the United States.

8              **MR. ROSENBLUM:**  Good morning, Your Honor.

9      Mark Rosenblum.  I represent Ms. Catalano.

10             **THE COURT:**  Ms. Catalano, would you stand and raise

11     your right hand, please.

12         (Defendant sworn.)

13             **THE DEFENDANT:**  Yes, I do.

14             **THE COURT:**  What is your name, ma'am?

15             **THE DEFENDANT:**  Christina Lynn Catalano, sir.

16             **THE COURT:**  You may sit down.

17             Have you had any pills, drugs, medication, or alcohol

18     within the past 48 hours?

19             **THE DEFENDANT:**  No, sir.

20             **THE COURT:**  Have you ever been diagnosed as having a

21     mental or emotional disorder other than your drug addiction?

22             **THE DEFENDANT:**  Yes, sir.

23             **THE COURT:**  What?

24             **THE DEFENDANT:**  PTSD, bipolar, and depression, manic.

25             **THE COURT:**  Are you taking any medication for that

*United States District Court*
*Middle District of Florida*

1    condition now?

2          **THE DEFENDANT:**  I'm on several medications but not

3    any right this second.  I'm not taking --

4          **THE COURT:**  Are any of them for your -- psychotropic

5    medications?

6          **THE DEFENDANT:**  Yes.

7          **THE COURT:**  What are they?

8          **THE DEFENDANT:**  Abilify, lamotrigine, trazodone, and

9    alprazolam.  And there's another one -- Lamictal.

10          **THE COURT:**  So are you taking those medications as

11    prescribed?

12          **THE DEFENDANT:**  Yes, sir.  The jail is not giving

13    them to me.  But, yes, sir.

14          **THE COURT:**  So you've not had those medications for a

15    while?

16          **THE DEFENDANT:**  No, sir.

17          **THE COURT:**  So are you thinking clearly today?

18          **THE DEFENDANT:**  Yes, sir.

19          **THE COURT:**  Mr. Rosenblum, have you -- have you had

20    any difficulty communicating with your client?

21          **MR. ROSENBLUM:**  No, Your Honor.

22          **THE COURT:**  Do you have any reason to believe that

23    she is unable to understand what is going on here today?

24          **MR. ROSENBLUM:**  No reason to believe that,

25    Your Honor.

1          **THE COURT:**  Mr. Felicetta, do you have any

2    information on that?

3          **MR. FELICETTA:**  I don't -- no, Your Honor.  I just

4    wanted to inform the Court the reason why she may not be

5    getting her medications.  She was arrested last Friday on a

6    violation of pretrial release, saw -- in Tampa, transferred to

7    the Ocala division on Monday, and here we are four days later.

8    It may just be that the medical staff there has not yet gotten

9    her --

10         **THE COURT:**  Okay.  That's a good point.  Thank you,

11   Mr. Felicetta.

12         Has it only been four days since you've had your

13   medication?

14         **THE DEFENDANT:**  Yes, sir.

15         **THE COURT:**  Okay.  So you're still benefiting from

16   the results of having taken it before your arrest?

17         **THE DEFENDANT:**  Yes, sir.

18         **THE COURT:**  Okay.  Ms. Catalano, on November 30th,

19   2020, you entered a plea of guilty to Count I of the indictment

20   charging you with disaster assistance fraud in violation of

21   Title 18, United States Code, Section 1040, and Count II of the

22   indictment charging you with making a false statement to a

23   federal agency in violation of 18 U.S.C. Section 1001(a)(2).  I

24   previously accepted your guilty plea and adjudged you guilty of

25   those offenses.  We've now reached that stage in the proceeding

6

1    where it's my duty to address several questions to you and your

2    attorney as well as counsel for the Government.

3            First, have you had an opportunity to read and

4    discuss with Mr. Rosenblum the contents of your presentence

5    report?

6            **THE DEFENDANT:**  Yes, sir.

7            **THE COURT:**  Do you have any objection to the factual

8    accuracy of that report?

9            **THE DEFENDANT:**  No, sir.

10           **THE COURT:**  Now, there is one objection to a -- what

11   we call an enhancement, a two-level enhancement.  Is that the

12   only objection you have?

13           **THE DEFENDANT:**  Yes, sir.

14           **THE COURT:**  And Mr. Rosenblum, is that the only

15   objection?

16           **MR. ROSENBLUM:**  It is, Your Honor.

17           **THE COURT:**  Do you want to address that now?

18           **MR. ROSENBLUM:**  Yes, if I could.  And I'm going to be

19   addressing it both in my objection now and in my allocution.

20           I think it's -- I think it's calculated correctly

21   just in the sense that as I think the Court would have seen

22   from my sentencing memorandum, there is Eleventh Circuit

23   precedent where this has come up before.  And I don't -- I

24   didn't see any published opinions.  I did see several

25   unpublished opinions.  I did see some published opinions in

*United States District Court*
*Middle District of Florida*

1    other circuits that also found that the two levels were

2    appropriate with the 1001 conviction.  My only objection -- and

3    I realize how the Court has to rule based on the precedent, but

4    my only objection is that Ms. Catalano's false statement when

5    she was interviewed by the OIG agents did not, in fact, impede

6    or obstruct the investigation.  So it's just more of a

7    practical objection.  And I'll get to the more equitable parts

8    of it in a minute.

9              THE COURT:  Okay.  Thank you, sir.

10             Do you need to be heard, Mr. Felicetta?

11             MR. FELICETTA:  I don't believe so, Judge.  My

12   position is in the presentence report.  I think the application

13   applies.

14             THE COURT:  The objection is overruled.

15             Do you have any objections to the presentence report

16   or the guideline calculations?

17             MR. FELICETTA:  No, Judge.

18             THE COURT:  The Court adopts the undisputed factual

19   statements and guidelines applications contained in the

20   presentence report, and I determine that the advisory

21   guidelines are:  Total offense level, 13; criminal history

22   category VI; 33 to 41 months' imprisonment; two to five years'

23   supervised release; $18,985.80 restitution; 5,500 to $55,000

24   fine.

25             Is there anyone present on behalf of the victim in

1   the courtroom?

2           **MR. FELICETTA:**  No, Your Honor.  The United States

3   Department of Agriculture, FEMA, is the victim in this case.

4           **THE COURT:**  Yes.  That's why I said "representative."

5           Do you know of any reason why the Court should not

6   now proceed with imposition of sentence?

7           **MR. ROSENBLUM:**  No, Your Honor.

8           **THE COURT:**  Do you wish to make a statement or

9   present any information in mitigation of sentence?

10          **MR. ROSENBLUM:**  I do.  Thank you, Your Honor.

11          Your Honor, let me pick up right where I left off in

12  terms of the guidelines and how the Court should view them.

13  And as I said, I don't believe that the false statement that

14  Ms. Catalano made caused any impediment or obstruction of the

15  investigation.  So I'm asking the Court to vary downward by

16  those two levels.  But from my personal perspective, a more

17  important reason to vary downward is because, to put it

18  bluntly, Ms. Catalano received some bad advice from me.  And

19  I -- I'm -- I talked about it in my sentencing memo.  What

20  happened was that Mr. Felicetta offered a plea agreement that

21  would have dismissed the false statement charge in exchange for

22  the plea to the FEMA fraud charge.  And I guess I'm just

23  programmed -- I think the Court knows that my office generally

24  has the policy that we don't enter into plea agreements because

25  the Government's plea agreements require a -- a waiver of the

1    right to appeal.  And the way I was thinking about it was that

2    the charges would be grouped, and I just didn't see the issue

3    that Mr. Felicetta pointed out to the probation officer after

4    he got Ms. Clark's original presentence report and -- we both

5    did.

6              So my bad, and I have told Ms. Catalano that if the

7    Court does go to -- does not vary down --

8              **THE COURT:**  So when you say "your bad," let me see if

9    I understand.  You're saying it's "your bad" because you didn't

10   advise her that there could be the two-level bump because she

11   didn't plea to a second count?

12             **MR. ROSENBLUM:**  That's right.  I gave her some bad

13   advice.  And if I had known then what I know now, I would have

14   accepted the Government's plea agreement on Ms. Catalano's

15   behalf, which would have put her at the offense -- total

16   offense level of -- I believe it's 11, which would be the 27 to

17   33 months, rather than the 13 where she's at 33 to 41 months.

18   And I've told Ms. Catalano that if the Court does go to the

19   33- to 41-month range, then she ought to file a 2255 against me

20   for my ineffective assistance.

21             Now, to talk about Ms. Catalano's history and

22   characteristics -- and it's a very well-done presentence report

23   that gives all of the information that I'm going to speak

24   about.  But she did have a very difficult upbringing.  There

25   were drugs in her home.  There were -- there was abuse.  When

*United States District Court*
*Middle District of Florida*

1       she -- when her parents were unable to take care of her, her

2       grandparents took over, and she lived and was brought up by her

3       grandparents.  But, unfortunately, her grandfather abused her

4       both physically and sexually.

5               And then, coming from her childhood into her adult

6       life, she got into not one but two abusive marriages and had a

7       difficult time there and then, now, is married for the third

8       time to Mr. Catalano who the Court will be meeting in a few

9       minutes.  And that is a stable marriage.  She loves and

10      respects Mr. Catalano.  But, of course, the Court is aware,

11      from the fact that he is a codefendant in the case and the fact

12      that he also apparently has drug problems, that there are

13      difficulties there as well.

14              And there was the incident where Mr. Catalano's

15      daughter, Ms. Catalano's stepdaughter, apparently viciously

16      stabbed both her and her husband.  And Ms. Catalano was very

17      badly hurt.  She was stabbed multiple times, and I think that's

18      part of her PTSD that she mentioned that she suffers from.

19              She also has serious mental health problems.  And she

20      just gave the Court the menu of drugs, mood-stabilizing drugs,

21      psychotropic medication, that she takes in order to deal with

22      her mental health problems.  And, you know, you can spend five

23      minutes talking to Ms. Catalano, and you can see the mental

24      health issues that she has.  She's a very troubled woman.  And

25      coupled with that, of course, is the drug abuse problems which

1    caused her bond to be revoked and has, I believe, caused a lot

2    of her criminal history in terms of her using bad judgment in

3    terms of how she has conducted her life.

4           The good news is that she wants treatment.  And, of

5    course, the Court is in a position to afford her that treatment

6    whether it's in an incarcerative sentence or a supervised

7    release setting or both.  And she wants both drug abuse

8    treatment, drug counseling, and mental health counseling.

9           She does have a significant criminal history.  She's

10   in criminal history category VI.  And I do apologize to the

11   Court.  In my sentencing memo, I made an argument that the

12   criminal history was overstated.  But Ms. Clark and I later

13   talked, and it turned out that we both had some wrong

14   information.  And so that's not a valid argument anymore.  But

15   just to mention to the Court, if you go through her criminal

16   history, I think the Court will see that there are no crimes of

17   violence that she's ever been convicted of.  And this, of

18   course, is a nonviolent offense that she's charged with now.

19          So having said all of that, Ms. Catalano needs help.

20   And the Court, of course, is in the position to grant her that

21   help.  And what she has asked me to request is a time-served

22   sentence with supervised release to follow and home detention

23   as a condition of that supervised release.

24          That's all I've got, Your Honor.

25          **THE COURT:**  Ms. Catalano, do you want to make a

1    statement?

2              **THE DEFENDANT:**  Yes, sir.

3              **MR. ROSENBLUM:**  Your Honor, do you want her to come

4    up to the podium?

5              **THE COURT:**  No.  She's fine where she is.

6              **THE DEFENDANT:**  Sorry.

7         I just wanted to tell you I'm very sorry for the

8    crime that I committed, and I wanted to apologize to the State,

9    as well, because the families that needed that money that I

10   took, it was wrong of me.  I feel very guilty and ashamed; and

11   I'm very sorry; and I was wrong.  And I'm asking you today,

12   Your Honor, to please have leniency on me.  I will pay the

13   restitution, and I will continue my substance abuse classes and

14   my mental health.  I'm very sorry.

15             **THE COURT:**  Is there anything else?

16        I'm sorry.  I didn't mean to cut you off.

17             **THE DEFENDANT:**  I said I'm very sorry, and I didn't

18   mean to make Homeland Security come out to make an

19   investigation that shouldn't have been.  That's it.

20             **THE COURT:**  Thank you, ma'am.

21             **THE DEFENDANT:**  Yes, sir.

22             **THE COURT:**  Mr. Felicetta, does the Government wish

23   to be heard?

24             **MR. FELICETTA:**  Yes, sir.

25        Your Honor, first, with respect to just the guideline

1    issue, kind of generally, I'm not sure why it's so different

2    from the district I came from and here, but the Federal

3    Defender's Office here likes to plea on max penalty statements

4    rather than a plea agreement, where that was almost never the

5    case in the Western District of New York.  And I don't know why

6    the policy difference exists, but I think that's what ends up

7    creating some of these issues.  But I suppose the reason is, as

8    I've been told, is because in this district they want to

9    preserve the right to appeal.  So I don't think it's

10   ineffective to be wrong about the projected guidelines.

11           And I would say to the Court that I would reject the

12   concept or idea that you can't sentence within the guidelines

13   because an attorney got it wrong.  We all make mistakes on the

14   guidelines, on our side and on their side.  It does not make

15   you ineffective, and it would not be good advice to file a 2255

16   on that basis because it would not be, per se, ineffective.

17   She got a benefit from pleading to the max penalty statement

18   and not taking my plea offer.  That is, she did not have to

19   give up her right to appeal, which I would have insisted on if

20   she took my deal.  And so defense counsel being wrong on the

21   guidelines is not a basis for the Court to depart, and it's not

22   a basis for ineffective assistance.

23           Having said that, there is some inequities in the

24   guideline.  The sentencing commission, in 2018, revised this

25   guideline to make it such that if you lie to law enforcement,

1    you can only get the obstruction enhancement if it impeded the

2    investigation.  Prior to that, it didn't matter if you impeded.

3    And as I've conceded both to Mr. Rosenblum and to probation,

4    this did not impede their investigation.  They knew exactly

5    what happened when they went to go talk to her.  They were

6    hoping that she would be honest with them.  Even in the face of

7    all the evidence they had, she maintained her innocence and

8    continued to lie about what happened.

9            **THE COURT:**  The continuation of the original offense.

10           **MR. FELICETTA:**  So -- right.  So there is some

11   inequity in the sense that if she hadn't pled to the actual

12   offense regarding lies to the law enforcement officer, the

13   false statement charge, she would not have gotten the two-level

14   enhancement, whereas the guidelines don't seem to care whether

15   it impeded the investigation if there's an offense of

16   conviction.  So I understand Mr. Rosenblum's equity argument,

17   but the structural legal argument I reject.  I think the Court

18   can sentence within the guidelines.

19           With regard to this offense, Ms. Catalano has a very

20   significant history involving both drugs and theft or fraud.

21   In this case, she -- I've counted here, just in my notes, at

22   least on 12 occasions, affirmatively communicated to the United

23   States Government, to FEMA, various things such as false

24   affidavits, false rental agreements, false inspections, false

25   appraisals, fake photos that she obtained on the internet of

1    another disaster in Texas.  She affirmatively and repeatedly

2    communicated with the Government with fraudulent documents and

3    pictures in an effort to continue obtaining funds to which she

4    knew she was not entitled.  And beyond that, there's at least a

5    dozen other communications, either verbal -- on the phone --

6    that were recorded or written.  And as I mentioned, even in the

7    wake of all of that, she still maintained that she was entitled

8    to that money.

9         When she came in for her arraignment -- she

10   surrendered herself -- and I struggled with what to do with

11   detention because her record and her drug use really called for

12   detention.  And I agreed to allow her to be out for treatment

13   purposes.  And she had hiccups along the way, which I expected.

14   And probation was very good -- pretrial services was very good

15   with her.  And I tried, as best I could, to have some leniency

16   with regard to the violations and not recommend revocation

17   despite the things you see with drug users, which is the

18   pattern of deception, the pattern of refusing to comply, and

19   the inability to follow the program directives.

20        Now, at the same time -- and perhaps this is me not

21   considering this -- but I allowed her husband to be out, who's

22   the codefendant, and the both of them were doing the same

23   thing.  They were both using meth, lying about it, and causing

24   a lot of extra work for pretrial services, which culminated

25   with both of them being revoked and both of them being

1    incarcerated now.

2           She's only had a week in though.  And to give her

3    time served, I think, would not appropriately follow the

4    reasons for sentencing here, which is to promote respect for

5    the law and just punishment for the defendant's crimes.

6           I do think that the defendant does need drug

7    treatment, and I hope that she gets it.  She's young enough to

8    turn her life around despite her record.  But I would submit to

9    the Court that if you sentence her at the low end of the

10   guidelines, 33 months, that would still be within the range she

11   would have had without the enhancement.  That would have been

12   at the high end, but it would have been within the range.

13          So I would ask the Court to sentence her to

14   33 months.  I do think drug treatment is appropriate.  There is

15   a supervised release range of two to five years on Count I, and

16   I would submit that the higher range is appropriate because I

17   suspect she'll need supervision for quite some time if she's

18   going to truly kick this.  So I would recommend a five-year

19   term of supervised release on Count I and three on Count II, to

20   run concurrent, and, as laid out in paragraph 105, restitution

21   to FEMA in the amount of $18,985.80.

22          Thank you, Your Honor.

23          **MR. ROSENBLUM:**  Your Honor, could I respond to

24   something Mr. Felicetta said very briefly?

25          **THE COURT:**  Yes, sir.  If you will wait just one

1    minute.

2          Okay.  Go ahead.

3          **MR. ROSENBLUM:**  I just wanted to point out to the

4    Court that Ms. Catalano, during the period of time that she was

5    on bond -- which, of course, went over several months because

6    her bond was only revoked two days ago -- did participate in

7    drug treatment.  And she -- she took it very seriously.  And,

8    also, there were a number of negative drug screens.  They

9    weren't all positive.  So I do think that there is some hope

10   that drug treatment can assist her.

11         **THE COURT:**  Would you accompany your client to the

12   podium, please, Mr. Rosenblum?

13         **MR. ROSENBLUM:**  Yes, Your Honor.

14         **THE COURT:**  I've asked Ms. Catalano why judgment

15   should not now be pronounced, and, after hearing her response

16   and the response of counsel, I find no cause to the contrary.

17   The parties have made statements on their behalf, and the Court

18   has reviewed the presentence report.

19         I overrule the objection to the -- I've already

20   overruled the objection to the calculation of the guidelines,

21   but I appreciate counsel -- particularly, Mr. Felicetta's

22   response to the -- or discussion of an explanation of the

23   equitable arguments.  And I agree that it's inequitable to

24   apply the two-level enhancement under the facts of this case

25   for reasons that we've discussed.

1          But I look at the level 11, which is where we are

2    without the two-level enhancement, that puts us in the 27-to-33

3    range.  That's an advisory range, as you know, not one that's

4    required.

5          So, Ms. Catalano, have you been sentenced in federal

6    court before?  I don't recall without looking.

7          **THE DEFENDANT:**  No, sir.

8          **MR. ROSENBLUM:**  No, Your Honor.  All of her previous

9    cases have been in the State system.

10         **THE COURT:**  This is a little bit different.  The

11   judges, in my experience in State court -- which I admit is

12   somewhat dated -- really gave the judges a whole lot more

13   latitude in sentencing because they had a different -- they

14   have a different goal in sentencing.  We, in this court, are

15   required to make certain considerations in imposing a sentence,

16   and I want you to hear what they are.  Mr. Felicetta referred

17   to one of them or a couple of them.

18         Let me see.  These are under the factors to be

19   considered in imposing a sentence:

20         One, the nature and circumstances of the offense and

21   the history and characteristics of the defendant.  We've talked

22   about those.  The attorneys have talked about those, about the

23   character of your offense, how it happened, and I've read about

24   it in the presentence report.  And -- and I placed you in the

25   guidelines where I think you need to be, at least how they

1    should advise me.  I've considered the lower calculation as my

2    advice from the -- from the sentencing guidelines.  And -- and

3    I've read a lot about your -- the history and characteristics

4    of the defendant, you.  And I think you're very much addicted

5    to substance, and I think it's ruining your life.  And I think

6    that's, perhaps, created by -- I don't know, but certainly

7    complicated by your mental illness, both of which require

8    attention.  And you don't get it by yourself, not consistently,

9    not to the extent that it's going to keep you out of trouble.

10          I'm supposed to consider the need for the sentence

11   imposed, and, in doing that, I'm supposed to impose a sentence

12   that reflects the seriousness of the offense, to promote

13   respect for the law, and provide just punishment.

14          I'm supposed to afford adequate deterrence to future

15   criminal conduct, to protect the public from further crimes, to

16   provide you with needed educational or vocational training or

17   medical care.

18          So it's not about whether I think you need another

19   chance or whether another chance would be good, which I

20   couldn't make that conclusion anyway.  If I turned you loose

21   without any treatment, without any confinement, I'm failing

22   under the mandate of that statute, and, quite frankly, I'm

23   failing you.  I'd be failing you.  You need a time-out.  And I

24   say that not out of any sense of meanness, but -- and I don't

25   like to be viewed as harsh in what I do.  I want to be viewed

1   as reasonable and following my responsibility under the

2   statute.  And I cannot do that by putting you on supervised

3   release with a condition of home confinement.  I can't do it.

4           Now, here's the deal.  I'm going to require that you

5   receive mental health and drug rehabilitation assistance while

6   you're on supervised release.  And I'm going to make that for a

7   significant period of time in hopes that you can -- you can

8   achieve some success.  Who knows, you might go three years and

9   just do dynamite.  You may get this behind you, and that would

10  be the end of it.  That's what I hope.  But I want you to get

11  it in prison too.  I don't know that they'll follow my

12  recommendations, but I'm going to -- I'm going to say that it's

13  a recommendation as strong as I can make that you get it while

14  you're in prison.

15          There are so many wonderful people who get messed up

16  with substance and sacrifice all kinds of potential, and I

17  think you're one of them.  I don't think you can help yourself.

18  I don't pretend to understand the science of addiction.  But I

19  think it is a science.  I think it's a genetic thing or a

20  physiological thing.  And goodness knows we have people with

21  unlimited potential who are prisoners not of the Government but

22  of their own addiction.

23          I'm going to tell you something.  You are a woman of

24  modest means.  You're not going to be able to go out and go

25  into one of these $50,000 rehab programs.  But my experience,

1    for what it's worth, is that those programs are no better than

2    the kinds of programs that are available to people who are

3    indigent.  I went to a funeral of somebody who was -- who, for

4    decades, he'd been in a 12-step program.  And the people who

5    came there to honor him and explain why he was important to

6    them ranged from homeless people, maybe living under a bridge,

7    to executives in big corporations.  You know, it's something

8    that can be overcome, but it requires you to dig deep and

9    accept the help and go through the process.

10         Don't give up on yourself.  Try to take care of

11   yourself.  Okay?

12         The parties have made statements on their behalf, and

13   the Court has reviewed the presentence report.  Pursuant to

14   Title 18, United States Code, Sections 3551 and 3553, it's the

15   judgment of the Court that the defendant, Christina Lynn

16   Catalano, is hereby committed to the custody of the Bureau of

17   Prisons to be imprisoned for a term of 30 months.  This term

18   consists of 30 months as to Count I and 30 months as to Count

19   II, such terms to run concurrently.

20         While in prison, it's recommended strongly that you

21   receive a -- the benefit of a drug rehabilitation program.

22         Normally, I would recommend that you go to Coleman,

23   but I recommend that you go to a facility where you will

24   receive a drug rehabilitation program given that modest

25   sentence.  That's not a long sentence by federal standards, and

1    sometimes people with longer sentences have priority.  But I

2    really want you to get the benefit of what they have to offer

3    to help you transition into supervised release.

4         Upon release from imprisonment, you shall serve a

5    five-year term of supervised release.  This term consists of a

6    five-year term as to Count I and a three-year term as to Count

7    II, such terms to run concurrently.

8         While on supervised release, you'll comply with the

9    mandatory and standard conditions adopted by the Court in the

10   Middle District of Florida.  In addition, you shall comply with

11   the following special conditions.

12        You shall participate in a substance abuse program,

13   outpatient, inpatient, or both, and follow the probation

14   officer's instructions regarding implementation of this

15   directive.  Further, you shall contribute to the costs of these

16   services not to exceed an amount determined reasonable by the

17   probation office's sliding scale for substance abuse treatment

18   services.  During and upon completion of the program, you're

19   directed to submit to random drug testing.

20        Two things about that that are different for you.

21   You've dealt with State probation, and they do the best they

22   can with the numbers.  But you've now dealt with pretrial

23   services in the federal system.  These people don't try to trip

24   you up.  They don't want you to come back for a violation of

25   supervised release.  They want very much for you to succeed,

1    but you have to do your part.  They're officers of this Court.

2    You need to respect them and not wind up getting a violation

3    that's going to send you back into custody.

4         You will participate in a mental health treatment

5    program, outpatient, inpatient, or both, and follow the

6    probation officer's instructions regarding implementation of

7    this directive.  Further, you shall contribute to the costs of

8    these services not to exceed an amount determined unreason --

9    determined reasonable -- not to exceed an amount determined

10   reasonable by the probation office's sliding scale for mental

11   health treatment services.

12        You know, I -- sometimes those drugs have side

13   effects, the psychotropic drugs.  I don't know if they do for

14   you or not.  Do they?

15       **THE DEFENDANT:**  (Shakes head.)

16       **THE COURT:**  Well, that's good.  But for some reason,

17   for -- people for whom they have side effects don't take them

18   because they don't want the side effects, and bad things happen

19   when they don't.  And I hope you get somebody -- I hope you get

20   in a program where they address both of these issues together.

21   And I'm going to ask probation to help you in that regard, make

22   sure you get this -- both problems are addressed.  Okay?

23       **THE DEFENDANT:**  (No response.)

24       **THE COURT:**  You're prohibited from incurring any new

25   credit charges, opening additional lines of credit, or

1    obligating yourself for any major purchases without the

2    approval of the probation officer.  You shall provide the

3    probation officer access to any requested financial

4    information.

5         Having been convicted of a qualifying felony, you

6    shall cooperate in the collection of DNA as directed by the

7    probation officer.

8         You must refrain from any unlawful use of controlled

9    substances.

10         You must submit to one drug test within 15 days of

11    placement on supervision and at least two periodic drug tests

12    thereafter as directed by the probation officer.

13         You must submit to random drug testing not to exceed

14    104 tests per year.

15         You shall pay restitution in the amount of $18,985.80

16    to the Federal Emergency Management Agency, Post Office Box

17    6200-16, Portland, Oregon, 97228-6200.  This restitution

18    obligation shall be payable to the Clerk, U.S. District Court,

19    for distribution to the victims -- victim.

20         While in the Bureau of Prisons' custody, you shall

21    either pay at least $25 quarterly if you have a non-UNICOR job

22    or 50 percent of your monthly earnings if you have a UNICOR

23    job.

24         Upon release from custody, you shall pay restitution

25    in the amount of $100 per month.  At any time during the course

1    of post-release supervision, the victim or the defendant may --

2    or the U.S. Attorney's Office or you may notify the Court of a

3    material change in your ability to pay, and the Court may

4    adjust payment -- the payment schedule accordingly.

5            The Court -- I find that you do not have the ability

6    to pay interest, and I waive the interest requirement for

7    restitution.

8            Based on your financial status, I waive imposition of

9    a fine.

10           I do, however, order that you pay a special

11   assessment of $200, which is due immediately.  That's required.

12   After considering the advisory guidelines and all the factors

13   identified in Title 18, United States Code, Section 3553(a)(1)

14   through (7), I find the sentence imposed is sufficient but not

15   greater than necessary to comply with the statutory purposes of

16   sentencing.

17           Having pronounced sentence, does counsel for the

18   defendant or counsel for the Government have any objections to

19   the sentence or the manner in which the Court pronounced

20   sentence?

21           **MR. FELICETTA:**  No, Your Honor.

22           **MR. ROSENBLUM:**  No, Your Honor.

23           **THE COURT:**  You're hereby remanded to the custody of

24   the United States Marshal to await designation by the --

25           **THE DEFENDANT:**  That's my grandbaby and my daughter.

*United States District Court*
*Middle District of Florida*

1              THE COURT:  Okay.

2              THE DEFENDANT:  That's my grandson I take care of.

3              THE COURT:  Well, you know, I'm glad that they came

4    here.  I'm sorry that it's late.  But, you know, that's a

5    really good reason for you to dig deep and try to overcome

6    these problems that get you in trouble, isn't it?  Cute little

7    guy.

8              THE DEFENDANT:  (Nods head.)

9              THE COURT:  You have the right to appeal from the

10   judgment and sentence within 14 days from the day of entry of

11   the judgment.  Failure to appeal within the 14-day period shall

12   be a waiver of your right to appeal.

13           The Government may file an appeal from this sentence.

14           You're advised that you're entitled to assistance of

15   counsel in taking an appeal.  And if you're unable to afford a

16   lawyer, one will be provided for you.

17           If you're unable to afford a filing fee, the Clerk of

18   the Court will be directed to accept Notice of Appeal without

19   the fee.

20           Do you understand everything that's happened?

21             THE DEFENDANT:  Yeah.

22             THE COURT:  Do you understand everything I said?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Everybody here wants you to succeed.

25   Okay?  And I'm sure that little guy who just left the courtroom

1    would really like to have you in his life.  So good luck.

2        (Proceedings adjourned at 12:03 p.m.)

3                    **C E R T I F I C A T E**

4            I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    April 21, 2021

8

9        ____s\  Nikki L. Peters_____
         Nikki L. Peters, RPR, CRR, CRC
10       Federal Official Court Reporter
         United States District Court
11       Middle District of Florida

12

13

14

15

16

17

18

19

20

21

22

23

24

25