```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                          OCALA DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.                        CASE NO. 5:20-cr-40-JA-PRL
                               February 12, 2021
                               Tampa, Florida
                               2:15 - 3:33 p.m.

CHRISTINA LYNN CATALANO,

                Defendant.
_____/


        TRANSCRIPT OF BOND REVOCATION/VIOLATION HEARING
         BEFORE THE HONORABLE ELIZABETH A. JENKINS
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:      SHAUNA HALE, ESQ.
                         Assistant U.S. Attorney
                         400 N. Tampa Street, Suite 3200
                         Tampa, Florida 33602
                         813/274-6000

For the Defendant:       NICOLE HARDIN, ESQ.
                         Assistant Federal Defender
                         400 N. Tampa Street, Suite 2700
                         Tampa, Florida 33602
                         813/228-2715

Court Reporter:          Howard W. Jones, RPR, FCRR
                         801 N. Florida Avenue, Suite 15A
                         Tampa, Florida 33602
                         813/301-5024




Proceedings transcribed via courtroom digital audio
recording by transcriptionist using computer-aided
transcription.
```

**P R O C E E D I N G S**

(Court called to order.)

THE COURT: Good afternoon. We're here for initial appearances and the first case we'll take up is United States of America vs. Catalano.

Appearances, please.

MS. HALE: Good afternoon, Your Honor, Shauna Hale for the United States.

THE COURT: Thank you.

MS. HARDIN: Good morning -- or good afternoon, Nicole Hardin here on behalf the Federal Defender's Office.

THE COURT: Thank you.

Ms. Catalano, can you hear me?

THE DEFENDANT: (Inaudible).

THE COURT: All right. And can we hear her? Is she being picked up on the recording? Just check.

You are charged, ma'am, with violating the bond conditions in your case that were set in the appellate division. It's alleged that you violated the bond conditions on January 5th, 2021, and it was alleged that you had a positive drug test on that date, which tested positive for methamphetamines, and that confirmation testing of the laboratory confirmed that on January 21, 2021.

You're not required at this time, ma'am, to answer or respond to the charge or make any statement. Any

```
 1   statement you do make can be used against you.
 2            You also have the right throughout these
 3   proceedings to be represented by an attorney and you have
 4   the right to appointed counsel if you cannot afford an
 5   attorney to represent you.
 6            Do you understand that?
 7            THE DEFENDANT:  (Inaudible).
 8            THE COURT:  Okay.  I appointed an attorney for you
 9   based on a financial affidavit that was prepared.  Was that
10   true and correct?
11            THE DEFENDANT:  (Inaudible).
12            THE COURT:  Okay.  You do qualify.
13            Now, I understand that sentencing is set very
14   shortly, on the 19th I believe.
15            MS. HARDIN:  That's my understanding, on Friday,
16   next Friday.
17            THE COURT:  Okay.  And that's before Judge Antoon.
18   What is your position with regard to the issue of bail
19   pending the revocation issue?
20            MS. HALE:  Me?
21            THE COURT:  Yes.
22            MS. HALE:  I'm asking for detention, Your Honor.
23            THE COURT:  I'm sorry, Ms. Hale, I didn't hear
24   you.
25            MS. HALE:  I'm asking for detention.
```

1    THE COURT:  Thank you.  And, excuse me, but I'm
2 just having to ask for some things to be repeated because
3 we're all masked.  Thank you.
4    Ms. Hardin?
5    MS. HARDIN:  Yes, we're just asking the Court
6 modify her conditions instead of revoking her conditions.
7 It's --
8    THE COURT:  Let me stop you there.  I believe that
9 since it was Judge Lammens that set bail in the first place
10 that it should be Judge Lammens to make that decision, so --
11 but you can go ahead and proffer what you would suggest, but
12 since he is most familiar with her and presumably she can be
13 made available the first of next week to appear before Judge
14 Lammens --
15    Would that be right, somebody from the Marshal's
16 Office?
17    THE MARSHAL:  (Inaudible).
18    THE COURT:  Well, it's within the District, so it
19 would be fairly soon, right?
20    THE MARSHAL:  I would say (inaudible).
21    THE COURT:  All right.  Thank you.
22    Anyway, go ahead.
23    MS. HARDIN:  The main reason is that she is the
24 sole provider and caretaker for her daughter and grandchild
25 and she lives -- I don't believe she knew this arrest was

1  coming or that she had been communicated with by Pretrial,
2  so it was a surprise. So she was -- we're just requesting
3  she be placed on home detention for the last week until she
4  goes in front of the Judge for sentencing.
5         My understanding is there's a request for a
6  non-incarcerative sentence. Even in that case, I don't know
7  what she's looking at, but based on the emergency of the
8  minor child that she was the main caretaker for, we're
9  requesting just home detention, which is a stricter form
10 than she is on right now.
11         THE COURT: All right. Well, give me a few more
12 specifics about the childcare situation.
13         MS. HARDIN: She could probably speak better, but
14 her adult daughter is with her, but she's mentally ill and
15 she's not able to caretake for the grandchild, and she's
16 been the sole caretaker. And while she has made provisions
17 for when she's going to be sentenced, she was not expecting
18 to be here now, a week earlier. And so when they arrested
19 her the child was left with the daughter, who's mentally ill
20 and she's just afraid of what's going to happen and
21 that's --
22         THE COURT: And how old is the child?
23         MS. HARDIN: Three.
24         THE COURT: Where does she live and why was she
25 arrested here? Does anybody know?

1                    Yes, sir, from Probation.  Can you speak to this?
2                    PROBATION OFFICER:  Sure.  She lives in Holiday,
3     Your Honor.  And she was arrested here because the Marshal's
4     Office in Ocala sent a request to the Marshal's Office here
5     in Tampa since they have ultimate jurisdiction.
6                    She does live with her daughter.  I'm not sure
7     about her daughter's mental health status, but there is a
8     minor child in the home.  Her husband, who is her
9     co-defendant, was also living in the home, but he was
10    recently revoked for a positive marijuana test as well, so
11    he's currently in custody.
12                   THE COURT:  Okay.
13                   PROBATION OFFICER:  But she does live here in
14    Holiday in Pasco County.
15                   THE COURT:  So she was taken here instead of Ocala
16    because that's what the Marshal said?
17                   PROBATION OFFICER:  No, not -- oh, why she was
18    brought to this court?
19                   THE COURT:  Yeah.
20                   PROBATION OFFICER:  She was brought to this court
21    because it was the closest court from where she was at when
22    she was arrested.
23                   THE COURT:  Right.  Okay.  Have you had any
24    experience with the defendant in terms of her childcare
25    responsibilities, has she told you anything other than what

1  you've described to me?
2          PROBATION OFFICER:  I know that the minor child
3  lives in the home with her.  I'm not sure exactly what
4  parental rights or how much responsibility she has to the
5  child, but I do know that a minor child resides in the home.
6  But I believe her daughter -- possibly her daughter may
7  reside there too.
8          THE COURT:  All right.  Well, the question would
9  be if this defendant is even stable enough to -- if I were
10 to consider an ankle bracelet, whether she is even stable
11 enough.
12         PROBATION OFFICER:  Your Honor, she's already on
13 an ankle bracelet, she's just on curfew.
14         THE COURT:  I see.
15         PROBATION OFFICER:  Part of the -- the Marshals
16 wanted her to report to Ocala to be taken into custody, but
17 because of what's contained in the violation report with her
18 recent stay at the mental health facility, we didn't want to
19 advise of the outstanding violation because we were
20 concerned that she could be a risk of danger to herself,
21 which is why we didn't have her ultimately -- I didn't call
22 her and say, hey, listen, the Judge has issued a warrant,
23 you (inaudible).
24         THE COURT:  All right.  Well, do you have an
25 opinion as to whether or not she could be relied upon until

1  sentencing?
2          PROBATION OFFICER: Your Honor, I mean, to be
3  honest with you, I had some grave concerns about her mental
4  health status, which is why I requested that the warrant be
5  issued, the fact that she was using methamphetamine and she
6  had used prior.
7          THE COURT: Right.
8          PROBATION OFFICER: Yeah. So I requested a
9  warrant because I felt that there could be concerns for her
10 own safety.
11         THE COURT: All right. Well, we're kind of
12 between a rock and hard place here, because it's hard for me
13 to test the veracity of the claim that she is responsible
14 for a child.
15         And, of course, with drug use, that's not good to
16 be around a child, as you know, Ms. Hardin. I gather that
17 your client might want to get some information from you.
18         MS. HARDIN: I think she wants to speak.
19         THE COURT: All right. Well, find out first if
20 it's something I should hear.
21         (Pause in proceedings.)
22         MS. HARDIN: She just wanted me to bring to the
23 Court's attention that she has been testing negative since
24 then and that there is no boyfriend living in the house,
25 it's really just a --

1        THE COURT:  Ms. Hardin, I can't hear you.  Repeat
2   it.
3        MS. HARDIN:  She indicated that she has tested
4   negative after that January 5th test, since then, and that
5   she's taking whatever medication has been given to her for
6   mental health and that there is no -- I know that they
7   mentioned there may be a boyfriend living there, but that's
8   not true.  So --
9        THE COURT:  A boyfriend of her or her daughter?
10       MS. HARDIN:  Of her daughter, I think he said.  It
11  was when Mr. Dodson (ph) said there may be somebody else
12  living there, and she said there is not, it's just her, her
13  daughter, and the minor child.
14       THE COURT:  Well, I go back to my initial
15  impression, which is that Judge Lammens should decide this,
16  but the sentencing is set -- and you say that the Guidelines
17  provide for a non-incarcerative sentence?
18       MS. HARDIN:  I don't know what the Guidelines
19  provide, I just know that the sentencing memorandum that was
20  filed by Mark Rosenbaum (ph) in our office has requested a
21  non-incarcerative sentence.  I don't know --
22       THE COURT:  I see.
23       MS. HARDIN:  -- if that is a variance argument or
24  not, I don't have that information.  I did try to reach him,
25  but I couldn't before this hearing.

1    THE COURT: All right. I'm going to come back to
2 this. I would like to see if --
3    Excuse me, I need to see the Marshal. I need to
4 talk to the Marshal.
5    (Pause in proceedings.)
6    THE COURT: All right. So I'm going to take this
7 matter under consideration, both as to whether or not I
8 should consider the bond issue or that should be for Judge
9 Lammens and we'll come back to this case at the end of the
10 calendar.
11    MS. HARDIN: Thank you.
12    THE COURT: Thank you. And would she -- okay. So
13 that is the only application on her behalf, right?
14    MS. HARDIN: Yes, Your Honor.
15    THE COURT: Okay. So we'll come back to that.
16    We're in recess on the case involving
17 Ms. Catalano.
18    (A recess was taken, after which the following
19 proceedings were had in open court.)
20    THE COURT: Okay. We are back in session in the
21 case involving Ms. Catalano. I decided to have a recess so
22 we could explore any other ideas with regard to jail and,
23 frankly, I am advised the Marshal can get her up here
24 Tuesday to appear before Judge Lammens, who is much more
25 familiar with her case than I am and that is what I'm going

1   to do.

2           But I will permit you, Ms. Hardin, to make any
3   additional argument.

4           MS. HARDIN:  I would just stand on the argument
5   we've already made.  And I did -- the underlying cases are a
6   female fraud case, so I do not think she would be looking at
7   a lot of time, but I do not have the full PSR.

8           THE COURT:  Okay.  Given all the circumstances,
9   including a very long history that Probation provided and
10  balancing all the information that I've heard, I do find
11  that she should be temporarily detained so that Judge
12  Lammens can make the final decision about the oral
13  modification of bond.  And because of the proximity of her
14  sentencing, I do find that for me to release her under the
15  proposed conditions absent full knowledge of the case would
16  not be a provident or practicable decision.

17          So the Marshals will present the defendant for a
18  hearing on Tuesday at a time to be set by the Court once the
19  Court knows the date for the hearing.

20          So is there anything further in the case?

21          MS. HALE:  None for the United States, Your Honor.

22          THE COURT:  All right.  You'll have a chance to
23  talk with your attorney, ma'am.  And that decision is made
24  knowing that you have indicated you have concern.

25          And I suggest that defense counsel, Ms. Hardin,

1  you certainly may call the State welfare services or
2  Pretrial may, Probation may as well, if there are concerns
3  about the situation at home.  And I would remind you of that
4  opportunity and perhaps obligation.
5              Anything further?
6              MS. HARDIN:  No, Your Honor.
7              THE COURT:  All right.  We'll be in recess.  Thank
8  you.
9                   (Proceedings concluded.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1  UNITED STATES DISTRICT COURT )
                                 )
 2  MIDDLE DISTRICT OF FLORIDA   )

 3
                    REPORTER TRANSCRIPT CERTIFICATE
 4
         I, Howard W. Jones, Official Court Reporter for the
 5  United States District Court, Middle District of Florida,
    certify, pursuant to Section 753, Title 28, United States
 6  Code, that the foregoing is a true and correct transcription
    of the stenographic notes taken by the undersigned in the
 7  above-entitled matter (Pages 1 through 12 inclusive) and
    that the transcript page format is in conformance with the
 8  regulations of the Judicial Conference of the United States
    of America.
 9

10                                  /s    Howard W. Jones
                                          _____
11                                  Howard W. Jones, RPR, FCRR
                                    Official Court Reporter
12                                  United States District Court
                                    Middle District of Florida
13                                  Tampa Division
                                    Date:  04-22-21
14

15

16

17

18

19

20

21

22

23

24

25
```